United States District Court
Southern District of Texas
**ENTERED**
November 09, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT AYALA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-335 |
| | § | |
| ARANSAS COUNTY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendants Anthony Ciarletta (Ciarletta) and Matthew Campbell's (Campbell's) Motion for Summary Judgment (D.E. 24). Plaintiffs Robert Ayala (Ayala) and Romanna LaCroix (LaCroix) filed a response (D.E. 26) and Defendants filed a reply (D.E. 27). For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a) because this action presents a federal question under 42 U.S.C. § 1983 and state law claims arising from the same case or controversy.

## FACTS

The events giving rise to this suit occurred during the early morning hours of August 18, 2013. The night before, Ayala and LaCroix, spouses, hosted a dinner party at their home. D.E. 24-2, pp. 4-5. In attendance were four of their friends—two couples. *Id.* After dinner and drinks, one of the couples left. *Id.* Some time after midnight, the

other couple, the Mills, decided to spend the night at Plaintiffs' home. *Id.*, p. 7. At about 3:00 a.m., Ayala called 9-1-1 and requested emergency medical services for his guest, Jeremy Mills, without telling LaCroix or the Mills that he had done so. D.E. 24-1, p. 10; D.E. 24-2, p. 10. After waiting for EMS until around 5:45 a.m., Ayala again called 9-1-1. D.E. 24-1, p. 11.

Aransas County Deputy Sheriffs Ciarletta and Campbell were dispatched to Plaintiffs' home to provide security for medical responders. D.E. 24-4, pp. 1-2. Ciarletta arrived first, wearing a body camera, and met Ayala at the door at about 5:59 a.m. *Id.;* D.E. 24-5. The video shows that Ayala allowed Ciarletta into the house, and directed him to a room where LaCroix and the Mills were located. *Id.* At about that time, Campbell arrived, and LaCroix left the room to talk with Campbell. *Id.* The Mills informed Ciarletta that they did not need medical services, so Ciarletta canceled the request for medical services. *Id.*

Ayala then walked into the room, and Ciarletta asked him to step out so they could have a word. *Id.* Ciarletta and Ayala went to the foyer of the house, and the body camera captured the following exchange:

| | |
|---|---|
| **Ciarletta**: | So they [the Mills] are just arguing, that is it? |
| **Ayala**: | Say what? |
| **Ciarletta**: | I said, they are just arguing? Is that the problem here? |
| **Ayala**: | No, I would like to go in there and say something. |
| **Ciarletta**: | What do you want to say? |
| **Ayala**: | [after a short pause] What is your problem? |
| **Ciarletta**: | You right now, because you are drunk, and you are giving me a hard time. |

| Ayala: | Well, yeah, I am drunk. |
| Ciarletta: | Yeah, and you are giving me a hard time for no reason.  I am asking you what is going on and you are being a jerk. |
| Ayala: | Well, you are in my house. |
| Ciarletta: | [raised voice] I don't care whose house I am in. |
| Ayala: | [shouting] Well f*** you! |
| Ciarletta: | [raised voice] No, f*** you a***hole! |
| Ayala: | [shouting] no f*** you! |

*Id.*  As this heated exchange occurred, the video shows that Ciarletta was holding a flashlight in his right hand.  *Id.*  After Ayala yelled "f*** you," the camera ceased recording video, but continued to record audio.  *Id.*  Ciarletta asserts that the camera stopped recording video because it "probably just broke."  D.E. 26-4, pp. 21-22.  Ayala asserts that Ciarletta purposefully turned it off just before attacking him.

After the video stopped recording, a thump is heard and a scuffle ensues.  D.E. 24-5.  Ayala has no recollection of the altercation, but after listening to the audio, he identified the thump as the distinct sound of a flashlight hitting a person.  D.E. 26-1, p. 3.  Ayala claims to be familiar with this distinct sound because he served as a deputy sheriff in Los Angeles County, California for many years.  *Id.*  Immediately after the video stopped recording and after the thump, the following is heard:

| Ciarletta: | F*** you.  Don't you ever f****ing point your finger at me again |
| Ayala: | You touched me. |
| Ciarletta: | You're going . . . |
| Ayala: | You touched me. |
| Ciarletta: | I don't care.  You don't point your finger at an officer. |

D.E. 24-5.

Ciarletta denies striking Ayala with his flashlight.   D.E. 24-4, p. 2.   Ciarletta claims that, just before the scuffle, Ayala "forcibly placed his hand" on him and pushed him so Ciarletta shoved him back.   *Id.*   It then appeared as if Ayala was about to "come at" Ciarletta in a forceful manner so Ciarletta went "hands on," resulting in a short scuffle in which both Ayala and Ciarletta fell to the ground.   *Id.*

Ayala claims that he committed no crimes and did not assault anyone or resist arrest.   D.E. 26-1, p. 3.   However, in his deposition, he testified that he does not remember most of his encounter with the deputies.   D.E. 24-1, pp. 18-24.   Based on the audio recording, Ayala asserts that Ciarletta struck him in retaliation for pointing his finger at him in a disrespectful manner and not because he shoved Ciarletta.

While Ayala and Ciarletta were in the foyer, Campbell was in the kitchen with LaCroix.   D.E. 24-3, p. 2.   Campbell responded to the fracas in the foyer and found Ciarletta and Ayala struggling on the ground.   *Id.*   Campbell then assisted Ciarletta in placing Ayala in handcuffs and Ayala was escorted to Ciarletta's squad car.   *Id.*
Campbell and Ciarletta assert that Ayala, despite being handcuffed, rammed Campbell with his chest.   *Id.*; D.E. 24-4, p. 2.   The deputies instructed Ayala to get into the vehicle at least fourteen times, but Ayala claimed that he was not physically able to because of a back injury.   As Ciarletta and Campbell attempted to place Ayala in the vehicle, Ayala kicked his legs to prevent their efforts.   *Id.*   Campbell went to the opposite side of the car and tried to pull Ayala into the back seat.   *Id.*   After repeated commands and a warning,

Ciarletta drive stunned Ayala with a taser[1] and the deputies were then able to place him in the vehicle.  *Id.*; D.E. 24-5.  Ayala does not remember being drive stunned, but the audio captured the incident.  D.E. 24-1, p. 18.  Ayala was charged with assault on a public servant and resisting arrest.  D.E. 26-1, p. 3.  Those charges were eventually dismissed. *Id.*

Ayala sued Ciarletta, Campbell, and Aransas County,[2] alleging Fourth Amendment claims of excessive force, wrongful arrest, failure to intervene, and malicious prosecution.  Ayala also claims that Defendants violated his rights under the First, Fifth, and Fourteenth Amendments.  LaCroix joins the suit, claiming that Campbell and Ciarletta's actions caused her to suffer "severe mental shock."  Last, both Plaintiffs bring state law claims for trespass and assault and battery.  Defendants Ciarletta and Campbell seek summary judgment against Plaintiffs on all claims.

## APPLICABLE LAW

### A. Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014); Fed. R. Civ. P. 56(a).  "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'"  *Id. (quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970)). "The movant bears the burden of identifying those portions of the record it believes

---

[1]   A drive stun occurs when the taser leads make direct contact with the person's body
[2]   Aransas County is not a party to the pending motion.

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial Rule 56(a) burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 3258.  The movant does not need to offer evidence to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  The nonmovant must identify specific evidence in the record and explain how that evidence supports its claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (*quoting Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

In evaluating the summary judgment record, the court draws all reasonable inferences in favor of the nonmoving party to the extent they are supported by evidence.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (*citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  This usually means adopting the plaintiff's version of the facts.  *Id.*; *see also Cole v. Carson*, 802 F.3d 752, 758 (5th Cir. 2015) (qualified immunity summary judgments are resolved by accepting the plaintiff's "best version of

the evidence").   However, if the plaintiff's version is so blatantly contradicted by the

record, so that no reasonable jury could believe it, the court should not adopt that version.

*Scott*, 550 U.S. at 379-80.   "[S]ummary judgment is appropriate in *any* case where critical

evidence is so weak or tenuous on an essential fact that it could not support a judgment in

favor of the nonmovant."   *Little*, 37 F.3d at 1075 (emphasis in original; quotation marks

omitted).

### B.  42 U.S.C. § 1983 Cause of Action

To maintain a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a

violation of the Constitution or of federal law and that the violation was committed by

someone acting under color of state law.   *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245,

252-53 (5th Cir. 2005).   Here, there is no question that Defendants Ciarletta and

Campbell were acting under color of state law.   Thus, the question for the Court is

whether Plaintiffs have offered evidence to show a claim for relief for violations of the

First, Fourth, Fifth, and Fourteenth Amendments to the Constitution.

Claims under § 1983 may be brought against persons in their individual or official

capacities or against a governmental entity.   *Goodman v. Harris Cnty.*, 571 F.3d 388, 395

(5th Cir. 2009) (*citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403

(1997)).   Personal-capacity suits seek to impose liability on a government official as an

individual, while official-capacity suits generally represent another way of pleading an

action against an entity of which the official is an agent.   *Id.* (*citing Monell v. Dept. of

Soc. Serv's. of City of New York*, 436 U.S. 658, 690, n.55 (1978)).   In a personal-capacity

suit, the individual defendant may assert personal immunity defenses such as qualified

immunity.  Ciarletta and Campbell have been sued in their personal capacities and both assert qualified immunity defenses.

### C. Qualified Immunity

The doctrine of qualified immunity shields officers from civil liability unless the facts show that their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  The defendant is entitled to summary judgment unless the plaintiff can demonstrate a claim sufficient to pierce the defense.  *Id.*  The plaintiff may not rest on his pleadings or unsubstantiated allegations.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Qualified immunity generally requires a two-step analysis: (1) whether the official violated a constitutional right, and (2) whether that right was clearly established.  *Collier*, 569 F.3d at 232 (*citing Saucier v. Katz*, 533 U.S. 194, 232 (2001)).  Courts have discretion to address either prong first.  *Id.*  The plaintiff must show that the defendant's conduct was objectively unreasonable in light of a clearly established rule of law. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).  This is a demanding standard because "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  A defendant is entitled to qualified immunity "unless existing precedent places

the constitutional question 'beyond debate.'" *Id.* (*quoting Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)).  This does not require a case *directly* on point, but there must be "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Id.* (*citing Morgan*, 659 F.3d at 372).

## DISCUSSION

### A. Fourth Amendment Claims

#### 1. Excessive Force Claims Against Ciarletta

Ayala claims two instances of excessive force:  (1) Ciarletta hit him on the head with a flashlight in the foyer, and (2) Ciarletta applied a drive stun with his taser when Ayala was placed in the deputy's vehicle.  Each use of force is distinct so each will be addressed separately. *See Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999), *reh'g denied on other grounds*, 186 F.3d 633.  As discussed more fully below, Ciarletta is not entitled to summary judgment with respect to Ayala's claim that he hit Ayala with a flashlight.  However, Ciarletta is entitled to summary judgment with respect to the drive stun incident.

To establish a claim of excessive force under the Fourth Amendment, Ayala's evidence must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (*quoting Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)).  Here, the parties do not dispute that

Ayala was injured.[3]   The dispute is whether Ciarletta used excessive force that was unreasonable during the incidents.

Regarding the reasonableness of force used, factors considered include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.   *Graham v. Connor*, 490 U.S. 386, 396 (1989).   "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."   *Id.* at 396-97.   This analysis is one of objective reasonableness, and an officer's subjective intentions are irrelevant.   *Id.* at 397.

### a.   The Assault—Factual Dispute

Defendants argue that Ayala has failed to present evidence showing that Ciarletta hit him with a flashlight.   Ayala has no recollection of being hit with a flashlight.   Rather, he claims to be familiar with the distinct sound of a flashlight hitting a person and the audio captured that distinct sound.   He asserts that a reasonable juror could conclude that Ciarletta intentionally shut off the body camera before attacking him.   He further claims that for some time after the altercation, he felt significant pain on the left side of his head, consistent with being hit with a hard object. And he suffered from confusion, memory

---

[3]   As proof of his injury, Ayala testifies—by affidavit—that he suffered considerable pain, memory loss, confusion, and that a neurologist diagnosed him with a concussion and "possible transitory ischemic attack."   Defendants do not challenge this evidence or dispute that Ayala was injured.   Accordingly, for this motion, the Court considers it undisputed that Ayala was injured.   Fed. R. Civ. P. 56(e)(2).

loss, and dizziness.   He also claims to have been diagnosed with a concussion and "possible transitory ischemic attack."

Defendants argue that Ayala cannot testify about the sound in the recording because he is not a sound expert.   Thus his testimony that the thump heard was a flashlight hitting someone is not competent evidence because Ayala is not qualified to form such an opinion.

Under Federal Rule of Evidence 702, a person who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if the expert's specialized knowledge will help the trier of fact to understand the evidence; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case.   The court must consider these factors to the extent they are pertinent, but the test for determining reliability is, by necessity, flexible.   *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).

This list of factors does not constitute a definitive checklist or test, and the court has leeway to determine reliability based on the nature of the proffered testimony.   *Id.* at 150.   The Sixth Circuit has stated:

> [I]f one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness.   Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee.   Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.

> On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness *if* a proper foundation were laid for his conclusions.  The foundation would not relate to his formal training, but to his firsthand observations.  In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

*Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994).

Here, Ayala has testified that on multiple occasions while in the line of duty as a Los Angeles County deputy sheriff, he heard the sound of a heavy duty police flashlight striking a person's head.  He has testified that this sound is distinct and recognizable.  Because of his experience as a law enforcement officer, Ayala has observed matters that the average juror has not.  Thus, he has shown that his testimony is based on sufficient facts to warrant submission to a fact finder.  Fed. R. Evid. 702(b).

In any event, in listening to the audio, there is a clear sound of an impact and a scuffle.  In addition, immediately after the thump, Ciarletta yells, "you don't point your finger at an officer."  A juror could reasonably conclude that Ciarletta attacked Ayala because Ayala's finger pointing insulted him.  It is unclear exactly what occurred, but it is clear that some level of force was used.  Accepting Ayala's "best version of the evidence" and drawing all inferences in his favor, the Court finds that there is a genuine dispute regarding whether Ciarletta assaulted Ayala, with or without a flashlight.

### b.  The Assault—Qualified Immunity

Under the first prong of the qualified immunity analysis, the Court must decide whether Ciarletta violated Ayala's Fourth Amendment right to be free from excessive and unreasonable force.  This requires consideration of the *Graham* factors—whether the

force used was reasonable in light of the crime at issue, whether Ayala posed an immediate threat to the safety of the officers, and whether he actively resisted arrest.

Ciarletta asserts that he "went hands on" because Ayala shoved him and was about to lunge at him. Additionally, Ayala resisted being placed in handcuffs, and Ciarletta required Campbell's assistance to gain control of Ayala. Because Ayala has no recollection of the events, he refers the Court to the audio recording, in which Ciarletta can be heard yelling, "you don't point your finger at an officer." Ayala maintains that a reasonable juror could conclude that Ciarletta struck Ayala because he was offended by Ayala's finger pointing, and not because he had been assaulted. If Ciarletta struck Ayala because he was offended by Ayala's finger pointing, Ciarletta had no objectively justifiable reason for using force and thus was "not legitimately exercising force in the performance of his duties as an officer." *Williams*, 180 F.3d at 704, *reh'g denied*, 186 F.3d 633, 634 (clarifying on rehearing that an officer's subjective intent is irrelevant to the analysis).

Accepting Ayala's version of the facts, he was merely pointing his finger at Ciarletta in a disrespectful manner and posed no threat to Ciarletta. Neither was he actively resisting arrest at the time he was assaulted. Under these circumstances, Ciarletta used force that was excessive and unreasonable.

It is beyond debate that the Fourth Amendment's restriction on unreasonable seizure prohibits the use of force where a person has committed no crime, posed no threat, and has not resisted arrest. *Graham*, 490 U.S. at 396; *Williams*, 180 F.3d at 704. Therefore, Ciarletta is not entitled to summary judgment based on qualified immunity

with respect to the assault claim.  Ciarletta's motion for summary judgment is DENIED regarding this claim.

### c.  The Drive Stun—Qualified Immunity

Ayala also argues that Ciarletta's use of his taser constituted excessive force that was unreasonable.  Under the summary judgment evidence, it is undisputed that Ayala resisted Ciarletta and Campbell's efforts to place him in the squad car.  The audio recording captured the deputies instructing Ayala to get in the car at least fourteen times and warning him about being tased.

The Court finds that Ciarletta's use of a taser was objectively reasonable in light of the *Graham* factors.  Ayala was actively and persistently resisting the deputies' attempts to place him in the vehicle, although they had given him clear instructions and warnings.  And Ciarletta applied the drive stun for only a few seconds—just long enough to secure Ayala's compliance.  *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (holding that an officer's quick application of a drive stun in order to subdue a noncompliant arrestee, after giving multiple verbal commands, was reasonable); *Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 182 (5th Cir. 2016) (multiple tasings were reasonable where handcuffed arrestee continued resisting and kicking); *Ceasar v. City of Eunice*, 642 Fed. Appx. 387, 389 (5th Cir. 2016) (multiple tasings were reasonable where arrestee actively resisted throughout the course of his arrest and booking); *see also Carrol v. Ellington*, 800 F.3d 154, 174-75 (5th Cir. 2015) (an officer's use of a taser after an arrestee refused to get on the ground did not violate clearly established law).  Because Ayala has failed to show any evidence that Ciarletta's use of a taser was excessive or

unreasonable under the circumstances, he has failed to show a constitutional violation and Ciarletta is entitled to summary judgment based on qualified immunity. The Court GRANTS Defendants' motion with respect to Ayala's excessive force claim premised on Ciarletta's use of a taser.

### 2. Wrongful Arrest Claim

The Fourth Amendment requires that a warrantless arrest by an officer be supported by probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Ayala alleges that Ciarletta violated his right to be free from unreasonable seizure by placing him under arrest without probable cause. "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-656 (5th Cir. 2004) (*quoting Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). Because probable cause is a wholly objective standard, viewed from the perspective of a reasonable officer, an arresting officer's subjective motivation is irrelevant. *Wren v. United States*, 517 U.S. 806, 813 (1996).

Defendants argue that at the time of Ayala's arrest, probable cause existed to believe that Ayala had committed the crimes of assault and resisting arrest.[4] Resisting arrest is defined as intentionally obstructing a peace officer from effecting an arrest or transportation of the actor by using force against the peace officer. Tex. Penal Code § 38.03(a). It is no defense that the initial arrest was unlawful. *Id.* § 38.03(b); *see also*

---

[4] Tex. Penal Code §§ 22.01 & 38.03 (West 2011).

*Barnett v. State*, 615 S.W.2d 220, 223 (Tex. Crim. App. [Panel Op.] 1981) (conviction for resisting arrest affirmed, stating that the legality of arrest is irrelevant).  The act of resisting can supply probable cause for the arrest itself.  *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (*citing Padilla v. Mason*, 169 S.W.3d 493, 504 (Tex. App.—El Paso 2005, pet. denied)).  Assault is defined as intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive.  Tex. Penal Code § 22.01.

Ayala does not controvert the evidence that he resisted being placed in handcuffs during the initial scuffle with Ciarletta, rammed Campbell with his chest when being escorted to the squad car, or resisted Defendants' efforts to place him in the squad car by kicking his legs.  This is sufficient evidence demonstrating that Defendants had probable cause to believe that Ayala committed an assault and resisted arrest.  Therefore, Ayala has failed to show that he was wrongfully arrested.  Accordingly, because there is no constitutional violation, Defendants' motion is GRANTED with respect to the wrongful arrest claim.

### 3. Failure to Intervene Claim Against Campbell

Ayala claims that Campbell should have intervened to protect him from Ciarletta's actions.  A police officer can be held liable for failing to take action if the officer is present when another officer violates an individual's constitutional rights.  *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  Bystander liability may be established "where an officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3)

chooses not to act." *Kitchen v. Dallas Cnty., Tex.*, 795 F.3d 468, 480 (5th Cir. 2014).  In evaluating whether an officer took reasonable measures to protect a suspect, courts have considered the duration of the alleged use of excessive force by other officers and the location of the suspect relative to the officer against whom bystander liability is sought. *See Gilbert v. French*, Civil Action No. H-06-3986, 2008 WL 394222, at *8 (S.D. Tex. Feb. 12, 2008) (no indication that officers had time to prevent use of excessive force that occurred over the span of a few seconds); *Paternostro v. Crescent City Connection Police*, Civil Action No. 00-2740, 2002 WL 34476319, at *11 (E.D. La. Apr. 2, 2002) (summary judgment evidence did not show that officer was in a location from which he could have had a realistic opportunity to prevent violations of another officer).

The Court has found that the drive stun did not violate Ayala's constitutional rights.  Thus, the only action to consider is the claimed assault during the initial scuffle. Ayala has not provided evidence that Campbell was aware of Ciarletta's alleged actions or that he had a reasonable opportunity to stop them.  The evidence shows that Campbell was not in the room when Ciarletta allegedly struck Ayala.  Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Ayala's claim premised on Campbell's failure to intervene.

### 4.  Malicious Prosecution Claim

Ayala argues that Defendants violated his Fourth Amendment rights by cooperating to procure his prosecution "on false pretenses based on the false and malicious arrests and reports" of Defendants.  D.E. 26, p. 11.  Ayala states that *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc) established that the Fourth

Amendment entitles him to a claim analogous to the common law tort of malicious prosecution. *Id.*, pp. 10-11.

In *Castellano*, the Fifth Circuit held that "malicious prosecution" standing alone is no violation of the Constitution. *Castellano*, 352 F.3d at 942.  The court elaborated that the initiation of criminal charges without probable cause "may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued."  *Id.* at 953.  The court further explained, "such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983.  Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion."  *Id.* at 953-54; *see also Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812-13 (5th Cir. 2010) ("[Plaintiff's] attempt to assert a free-standing § 1983 malicious prosecution claim [under the Fourth Amendment] fails as a matter of law.").

Ayala has failed to show that Defendants attempts at prosecuting him for assault and resisting arrest violated his Fourth Amendments rights.  As discussed above, the only arrest made in this case was supported by probable cause.  Further, Ayala's allegations regarding any false reports are conclusory.  He has not articulated any Fourth Amendment violations that resulted from Ciarletta and Campbell's reports.  The Court GRANTS Defendants' motion with respect to the claim that Defendants violated Ayala's Fourth Amendment rights based on false reports.

### B.  LaCroix's § 1983 Claim

Plaintiffs concede that LaCroix has no basis for making a claim under § 1983. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to LaCroix's § 1983 claims.

### C.  First, Fifth, and Fourteenth Amendment Claims

In his complaint, Ayala alleges that Defendants violated his right to free speech under the First Amendment and his due process rights under the Fifth and Fourteenth Amendments.  Defendants moved for summary judgment on these claims, but Ayala failed to address them in his response.  Under Local Rule 7.4, failure to respond to a motion will be taken as a representation of no opposition.  However, under Federal Rule of Civil Procedure 56, the moving party must still satisfy its initial burden of demonstrating an absence of material facts.  *See John v. Louisiana*, 757 F.2d 698, 707-09 (5th Cir. 1985).

Ayala alleges that he was arrested because he pointed his finger at Ciarletta and because he stated, "you are in my house."  He claims that these expressions are protected speech, and that his arrest was a pretext for suppressing such speech.  Because the Defendants have raised the defense of qualified immunity, Ayala bears the burden of proof on his First Amendment claim.  *See McClendon*, 305 F.3d at 323 (stating that when a defendant raises qualified immunity at the summary judgment stage, the plaintiff may not rest on his pleadings).  Ayala has failed to present evidence to support his allegations. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Ayala's First Amendment claims.

Ayala alleges that Defendants violated his due process rights under the Fifth and Fourteenth Amendments by generating false police reports that resulted in in his prosecution for crimes he did not commit.  D.E. 2, p. 14.  The Fifth Amendment applies only to the violations of constitutional rights by the United States or a federal actor. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).  Because Defendants are state actors, Ayala has failed to present facts that would implicate the Fifth Amendment. Defendants' motion is GRANTED with respect to any claims premised on the Fifth Amendment.

As for Ayala's Fourteenth Amendment claim, the Fifth Circuit has held that a § 1983 claim exists under the Fourteenth Amendment's due process clause when police officers intentionally use fabricated evidence to procure criminal charges against a person.  *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015).  Ayala's allegations regarding false police reports are conclusory.  Ayala has not presented the reports or their contents so he has failed to present evidence of any false reporting.   The Court GRANTS Defendants' motion with respect to the Fourteenth Amendment claims.

### D.    Trespass and Assault and Battery Claims

Plaintiffs have alleged claims for trespass and assault and battery under state law. Defendants failed to specifically address these claims in their motion for summary judgment.  Therefore, they have failed to identify these claims as required by Federal Rule of Civil Procedure 56(a) and have failed to show that there are no genuine disputes as to any material fact or that they are entitled to judgment as a matter of law. Accordingly, Defendants' motion is DENIED with respect to these state law claims.

## CONCLUSION

Defendants Anthony Ciarletta and Matthew Campbell's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The Court ORDERS as follows:

1. Defendants' motion is DENIED with respect to the excessive force claim against Anthony Ciarletta premised on the initial scuffle;

2. Defendants' motion is DENIED with respect to the state law trespass and assault and battery claims; and

3. Defendants' motion is GRANTED as to all other claims.

ORDERED this 9th day of November, 2016.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE